# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

**RANDY WOOD,**

      **Plaintiff,**

**vs.**                  **CIVIL ACTION NO. 2:16-CV-06502**

**NANCY A. BERRYHILL,[1]**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security concluding that there was insufficient evidence to support a finding that the Plaintiff was disabled as of October 11, 2007, and therefore, terminating the Plaintiff's benefits. The Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered March 28, 2017, (Document No. 20.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) as to whether the decision to terminate the Plaintiff's benefits was based on the substantial evidence. Presently pending before the Court are the Plaintiff's Brief in Support of Summary Judgment, and the Defendant's Brief In Support of Defendant's Decision. (Document Nos. 25 and 26.)

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for summary judgment (Document No. 25.), **GRANT** Defendant's request to affirm the decision of the Commissioner (Document No. 26.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

## Procedural History

The Plaintiff, Randy Wood (hereinafter referred to as "Claimant"), protectively filed his applications for Titles II and XVI benefits on November 30, 2006, alleging disability since December 19, 2003. (Tr. at 228-231.) He amended his alleged onset date to November 22, 2006 on September 20, 2007.[2] (Tr. at 232.) After his claims were initially denied on March 27, 2007 (Tr. at 143-148.) and again upon reconsideration on June 22, 2007 (Tr. at 150-152, 153-155.), Claimant filed a written request for hearing on July 10, 2007. (Tr. at 156-157.) Without a hearing, David B. Daugherty, Administrative Law Judge ("ALJ") found Claimant was under a disability from November 22, 2006 through the date of his decision, dated October 11, 2007. (Tr. at 128-136.)

By correspondence dated May 18, 2015, the Social Security Administration notified Claimant that his disability benefits were suspended because the Office of the Inspector General suspected fraud was involved in certain cases that included evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., or David P. Herr, D.O. (Tr. at 72-73.) Because such evidence had been submitted on Claimant's behalf by his then representative, Eric C. Conn, Claimant's entitlement to benefits had to be redetermined. (Id.)

---

[2] Claimant had filed prior applications on June 30, 2004 that were denied by the Honorable Andrew J. Chwalibog, by decision dated November 21, 2006. (Tr. at 108-119.)

Thereafter, on November 12, 2015, Claimant appeared for a pre-hearing conference before Stacy Scornia, an attorney with the Social Security Administration Office of Disability Adjudication and Review, to advise Claimant of his rights and to inform him of further proceedings related to his case. (Tr. at 63-70.) On December 29, 2015, an administrative hearing was held before the Honorable Amy Benton, ALJ. (Tr. at 43-62.) On March 25, 2016, the ALJ entered a decision finding Claimant had not been under a disability at any time from December 19, 2003 through October 11, 2007, the date of the prior decision. (Tr. at 13-30.) On April 12, 2016, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 9-11.) The ALJ's decision became the final decision of the Commissioner on May 18, 2016 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-3.)

On July 20, 2016, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 22 and 23.) Subsequently, Claimant filed his Brief in Support of Summary Judgment (Document No. 25.), and in response, the Commissioner filed a Brief in Support of Defendant's Decision. (Document No. 26.) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 46 years old on the date of the prior decision finding him disabled, and is a "younger person" by the Regulations throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 48.) Claimant attended school through the ninth grade, but did not obtain a GED. (Id.) Claimant last worked in November 2003 when he injured his back while employed as a continuous mining machine operator. (Tr. at 49.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical

shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." <u>Id</u>. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Those sections provide as follows:

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None,

one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

## **Summary of ALJ's Decision**

From the outset, the ALJ acknowledged that pursuant to Sections 205(u) and 1631(e)(7)[4] of the Social Security Act, in her redetermination of whether Claimant was entitled to benefits, she must disregard the evidence from the aforementioned medical providers, but specifically in this case, the evidence from Frederic T. Huffnagle, M.D. dated September 20, 2007. (Tr. at 16, 17, 19.) The ALJ next determined that Claimant met the insured status requirements through October 11, 2007, the date of the prior decision. (Tr. at 20, Finding No. 1.) The ALJ then determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since December 19, 2003, the alleged onset date. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the lumbar spine, amputation of the second and third fingers on the left hand, pain disorder, depression, and borderline intellectual functioning. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that the severity of Claimant's impairment did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except he

> (1) could occasionally climb stairs and ramps; (2) could never climb ladders and scaffolds; (3) could occasionally balance, stoop, kneel, crouch and crawl; (4) could perform with the non-dominate upper extremity (a) occasional power gripping, which is the type of grip that would be required to operate hand tools such as a drill, and (b) frequent fine fingering and handling; (5) must have avoided even moderate

---

[4] This is codified as 42 U.S.C. §§ 405(u) and 1383(e)(7).

exposure to hazards such as unprotected heights and moving mechanical parts; and (6) must have worked in an environment that is no louder than an office environment. Further, he could (1) understand, remember and carry out simple instructions; (2) have occasional interaction with supervisors, coworkers and the public; (3) only make simple, work-related decisions; and (4) only tolerate occasional change in work location.

(Tr. at 23, Finding No. 5.) At step four, the ALJ found that Claimant was incapable of performing his past relevant work through October 11, 2007, the date of the prior decision. (Tr. at 32, Finding No. 6.) At the final step, the ALJ found that in addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience, and RFC through October 11, 2007, the date of the prior decision, indicated that there were jobs that existed in significant numbers in the national economy that Claimant could have performed. (Id., Finding Nos. 7-10.) Finally, the ALJ determined Claimant had not been under a disability since December 19, 2003 through October 11, 2007, the date of the prior decision. (Tr. at 33, Finding No. 11.)

**Claimant's Challenges to the Commissioner's Decision**

Claimant succinctly asserts that he is entitled to a judgment of disability as a matter of law because he was not capable of light work per the ALJ's RFC assessment. (Document No. at 3.) Claimant alleged he was incapable of sitting, standing or walking for extended periods without pain, that the ALJ did not believe him, and instead gave great weight to the opinions of State agency medical consultants who cited no facts to support their conclusions. (Id.) Moreover, the ALJ only gave little weight to the opinion provided by Dr. Mahmood, Claimant's treating physician. (Id. at 4.)

In response, the Commissioner argues that substantial evidence supports the ALJ's conclusion that he was capable of light work. (Document No. 26 at 14-15.) Although Claimant experienced acute injuries to his left hand and foot in work-related accidents in 1989 and 2002,

there was no further treatment after his brief recovery periods. (<u>Id</u>. at 15.) Further, despite Claimant's allegations of back pain, the evidence from the majority of his medical providers of record, including his own treating physicians, indicated that Claimant's complaints did not accurately correspond with his injuries, and further, his physical examinations were essentially normal. (<u>Id</u>. at 15-16.) Additionally, Claimant's treating physician treated him with physical therapy and medications by his treating physician, and were noted to be effective in decreasing his pain and improving his ambulation. (<u>Id</u>. at 16.) The medical evidence supported the ALJ's RFC assessment that Claimant could perform light work, which would include the lesser demanding exertional sedentary work. (<u>Id</u>. at 17.)

The Commissioner also contends that the ALJ was legally entitled to rely upon the opinion evidence submitted by State agency medical consultants; indeed, the ALJ found even greater limitations that those found by the State agency physicians. (<u>Id</u>.) The Commissioner further argues that contrary to Claimant's contention that the State agency physicians failed to identify evidence in support of their opinions, it is clear that both physicians did cite specific evidence, including the evidence provided by Dr. Mahmood, in support of their respective opinions. (<u>Id</u>. at 17-18.)

Finally, the Commissioner asserts that the ALJ properly discounted Dr. Mahmood's opinion that Claimant was "totally disabled" under the pertinent Regulations and case law, and gave good reasons for doing so. (<u>Id</u>. at 18-19.)

In closing, the Commissioner asks that the final decision finding Claimant was not disabled at the time of the initial award be affirmed because it was based on substantial evidence. (<u>Id</u>. at 20.)

**The Relevant Evidence of Record**[5]

The undersigned has considered all evidence of record, including the medical evidence,[6] pertaining to Claimant's arguments and discusses it below.

Claimant's Statements of Daily Activities and Functioning:

In 2004, Claimant underwent a psychological evaluation connected with his worker's compensation claim. (Tr. at 599-607.) Claimant described his daily activities as staying on the couch, in a recliner, or on the porch; watching television; playing solitaire; driving short distances to the store; receiving visitors at home; but performing no household chores or yard work. (Tr. at 600.) During a self-referred visit to a psychologist on October 27, 2004, Claimant reported that he enjoyed watching sports and the news on television. (Tr. at 726.) On June 6, 2007, Claimant told a DDS psychological consultative examiner that he typically woke for the day at 6:00 a.m.; had his coffee and breakfast and talked with his wife; watched television throughout most of the day; could perform all basic self-care duties without assistance; relied on his wife to perform all household chores; and went to bed around 11:00 p.m. (Tr. at 797.)

In his Function Report dated December 19, 2006, Claimant reported that pain from his back, neck, left foot, and hand impairments limited his ability to perform activities such as sitting, standing, walking, lifting, and carrying. (Tr. at 278.)

Treatment for Back Impairment:

Claimant worked in the past as a coal miner. In May 1989, he sustained a crush injury to his left hand that resulted in amputation of his left middle and index fingers. (Tr. at 371.) His

---

[5] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

[6] The medical evidence referenced herein is the evidence from the relevant period.

wounds healed well, and his orthopedic surgeon, Anbu Nadar, M.D., released him to full duty work in June 1989. (Tr. at 371, 374.) In July 1989, Claimant presented to the emergency room after a stone fell and hit him on his right shoulder. (Tr. at 383.) An x-ray did not reveal any evidence of a fracture. (Tr. at 383, 385.)

In June 2002, Claimant sustained an injury to his left foot after a rock fell on it. (Tr. at 375, 516.) Dr. Nadar casted his foot after x-rays documented a fracture. (Tr. at 375, 517.) Two months later, Dr. Nadar removed the cast. (Tr. at 376.) By October 2002, Claimant was released back to work at full duty. (Tr. at 378-379.)

In May 2003, Claimant returned to Dr. Nadar with complaints of pain in his foot and ankle during prolonged standing or walking. (Tr. at 378.) Dr. Nadar ordered an x-ray that appeared normal with no significant degenerative changes seen. (Id.) He advised Claimant to wear an arch support and encouraged range of motion and strengthening exercises. (Id.)

In November 2003, Claimant presented to the emergency room for the onset of back pain after pulling a cable. (Tr. at 568.) A physical examination showed tenderness and muscle spasm in his lower back, but did not demonstrate any decreased range of motion. (Tr. at 567.) The attending physician ordered lumbar spine x-rays that were unremarkable. (Tr. at 565.) Claimant was diagnosed with acute lumbar strain and discharged home in stable condition. (Tr. at 567.)

A few days later, Claimamnt presented to Nawed Siddiqui, M.D., to follow up regarding his back pain. (Tr. at 497.) Dr. Siddiqui's examination revealed moderate to severe lumbar spine tenderness with some muscle spasm and decreased range of motion, but there were no focal motor or sensory neurological deficits. (Id.) Dr. Siddiqui diagnosed a sprain and hip pain, and prescribed Nubain, Vioxx, and Zanaflex. (Id.) He recommended that Claimant stay off work until his

appointment a week later. (Id.)

During that follow-up appointment in early December 2003, Claimant's examination remained unchanged. (Tr. at 496.) Dr. Siddiqui referred Claimant to Naveed Ahmed, M.D., who saw Claimant later that month for a neurological evaluation of his radiating back pain. (Tr. at 453-456, 496.) According to Claimant, Ultram and Zanaflex did not help, but Hydrocodone eased his pain. (Tr. at 453.) On physical examination, Claimant appeared in moderate distress with diminished lumbar spine range of motion and tenderness. (Tr. at 454.) He had normal muscle tone and bulk, 5/5 (full) strength in all muscle groups tested, normal coordination, intact sensation, brisk reflexes in both knees and ankles, and a normal gait and stance. (Tr. at 455.) Dr. Ahmed recommended physical therapy and continued use of Hydrocodone for a short period while in therapy. (Id.) A follow-up physical examination with Dr. Ahmed in April 2004 was consistent with the prior examination. (Tr. at 457-458.) Dr. Ahmed added Bextra and Lortab to Claimant's medication regimen. (Tr. at 458.)

Claimant followed up with Dr. Siddiqui in January 2004 reporting continued back pain. (Tr. at 471.) His physical examination remained the same. (Id.) Dr. Siddiqui ordered a lumbar spine MRI that showed mild annular bulges at L3-4, L4-5, and L5-S1. (Tr. at 471, 499.) There was no evidence of any disc herniation or stenosis. (Tr. at 499.)

From January until March 2004, Claimant participated in a course of physical therapy. (Tr. at 390-394, 426-435.) During the initial evaluation, Claimant ambulated slowly and antalgically but did not use an assistive device. (Tr. at 427.) He had full 5/5 strength throughout the lower extremities, with the exception of 4/5 strength during bilateral hip extension. (Id.) At discharge, his physical examination showed no neurological weakness. (Tr. at 434.) The straight-leg raising

test was negative while sitting, and tolerated to 60-70 degrees while lying down with no radicular complaints.[7] (Id.) He could bend forward 65-70 degrees at discharge compared to 25 degrees initially. (Id.)

In April 2004, Richard Sheridan, M.D., reviewed Claimant's medical records and performed an independent medical examination in connection with Claimant's worker's compensation claim. (Tr. at 436-439.) Claimant's complaints included intermittent low back and left thigh pain. (Tr. at 436.) Dr. Sheridan's physical examination was essentially normal: Claimant's sitting and standing stations were normal; there was no abnormal rotation or flexion of his trunk; Claimant complained of pain to superficial palpation over the L3-4 paraspinal muscles; there was no lumbar paraspinal spasm; Claimant could fully squat; Claimant got on and off the examination table independently; there were no signs of sciatica or sacroiliitis; Claimant had full 5/5 strength in the lower extremity muscle groups; and there were positive Waddell signs.[8] (Tr. at 437-438.) Dr. Sheridan assessed an acute low back strain that had resolved, noting there were no objective findings. (Tr. at 439.) As of April 29, 2004, Dr. Sheridan opined that Claimant needed no further treatment or medications for his November 2003 low back injury, and Claimant did not have any restrictions as a result of this injury. (Id.) Dr. Sheridan further opined that Claimant had a "0%" permanent impairment for purposes of worker's compensation. (Id.)

In June 2004, Claimant returned to Dr. Siddiqui reporting worsening pain. (Tr. at 464.) Dr. Siddiqui's physical examination remained unchanged: Claimant had moderate tenderness with

[7] The Commissioner points out that "[t]he results of a supine straight leg raise and sitting straight leg raise should be consistent. See Richard H. Rothman, M.D., Ph.D., and Frederick A. Simeone, M.D., The Spine 697-698 (3rd ed. 1992)." (Document No. 26 at 9, fn8.)
[8] The Commissioner also points out that "Waddell signs are signs of symptom magnification or inappropriate illness behavior. See Andersson and McNeil, Lumbar Spine Syndromes 115 (Springer-Verlag Wein, 1989)." (Id. at 10, fn9.)

some muscle spasm and decreased lumbar range of motion, but no focal motor or sensory neurological deficits. (Id.)

In August 2004, Claimant's worker's compensation carrier referred him for a physical evaluation. (Tr. at 507-512.) Joseph Rapier, Jr., M.D., observed reduced back range of motion with some muscle spasm. (Tr. at 508.) He opined that Claimant's work-related injury resulted in a 15% impairment of the whole body. (Tr. at 510.) A September 2004 independent medical examination by an audiologist opined that Claimant had a 2% whole body impairment resulting from noise exposure in the mines. (Tr. at 572.)

In September 2004, Kenneth Graulich, M.D., a neurologist, reviewed Claimant's medical records in connection with his worker's compensation case. (Tr. 638-641.) He did not examine Claimant, but based on his records review, he believed that Claimant sustained a "simple whiplash injury to the lumbar spine [and] to the thoracic spine" at work in November 2003. (Tr. at 640.) Dr. Graulich believed that Claimant did not have any functional impairment rating because there was no objective evidence that he did not recover in the typical recovery period of six to eight weeks. (Id.) He further opined that Claimant could return to his past work as a coal miner. (Id.)

Mansoor Mahmood, M.D., Treating Physician:

In March 2005, Claimant initiated treatment with Mansoor Mahmood, M.D., after Dr. Siddiqui stopped practicing medicine. (Tr. at 663.) Claimant explained his work-related injury from pulling a miner's cable, and reported constant pain at a level 10 on a 10-point scale. (Id.) He said he spent most of the day lying down due to pain. (Id.) Dr. Mahmood's physical examination revealed muscle spasm in the lumbosacral area, a positive straight-leg raising test, and no neurological deficits. (Id.) He recommended an NSAID, a muscle relaxer, and a pain medication

on an as-needed basis. (Id.) Follow-up appointments on a monthly basis throughout the remainder of 2005 and until August 2006 show continued reports of pain and no significant changes in Claimant's physical examinations. (Tr. at 659-662, 665-675, 731-737.) Claimant reported that his medications brought his pain down to a level 2 or 3 and resulted in better ambulation. (Tr. at 666, 668, 672, 731, 733, 736.) At nearly every appointment from April 2005 through August 2006, Dr. Mahmood found Claimant was "totally disabled" as a result of his pain from his work related injury. (Tr. at 661, 662, 664, 665, 666, 667, 668, 670, 674, 676, 677.) Dr. Mahmood also noted that in June 2006, Claimant "is responding to the treatment." (Tr. at 659, 669.)

Dr. Mahmood's treatment notes end in August 2006 before restarting after the relevant period, in January 2014. (Tr. at 864-894.)

Independent Psychiatric Evaluation:

In November 2004, David Shraberg, M.D. performed a psychiatric evaluation of Claimant in connection with his worker's compensation claim. (Tr. at 642-646.) Dr. Shraberg characterized Claimant as "somewhat dramatic", stating, "[h]e tends to groan, bend over, and get up throughout the examination." (Tr. at 644.) Dr. Shraberg further observed that Claimant complained of mechanical low back pain, but it appeared "rather disproportionate [] to the injury." (Id.) He felt that Claimant may no longer be suited to mining, and could possibly be better off working in an alternative occupation with less physical demands, however Claimant "appears to be little motivated to seek employment at a less strenuous level." (Id.) Dr. Shraberg found "some elements of embroidering of symptoms during his process of filing for Disability, as a means of avoiding rehabilitation and returning to the workplace." (Tr. at 645.) Dr. Shraberg found no evidence of psychiatric impairment. (Tr. at 644, 645, 646.)

<u>State Agency Medical Consultant:</u>

In March 2007, Marcel Lambrechts, M.D. reviewed the record evidence at the initial level of administrative review. (Tr. at 768-775.) In his opinion, Claimant could perform the lifting demands of light work; sit for about 6 hours in an 8-hour workday; stand/walk about 6 hours in an 8-hour workday; occasionally engage in all postural movements; had moderate hearing loss but did not use hearing aids; and should avoid concentrated exposure to temperature extremes and even moderate exposure to vibration and hazards. (Tr. at 769-772.) Dr. Lambrechts noted that

> This claimant's symptoms appear to be magnified. He has back problem and has a disc bulge at D5-6. That appears to be the main cause of his back problem but he also complains of pain in many joints. He walks with a cane and has a brace that was prescribed in "04". A recent physical report did not show a severe problem currently. [A prior ALJ decision dated November 21, 2006] shows that the claimant could still work at light activities with only minor restrictions. I agree with [the previous ALJ decision] even though [the claimant's treating physician] claimed that he was fully disabled. RFC has been reduced.

(Tr. at 773.) Dr. Lambrechts also noted Dr. Mahmood's August 2006 examination that showed a tender back with spasms, but no neurological deficits, and his diagnosis of a strain and non-specific back pain; the May 2004 IME findings including abnormal gait, tender back, reduced range of motion, but full motor strength; the January 2004 MRI revealing bulging discs, but no evidence of stenosis or herniation; the August 2006 MRI indicating D5-6 bulges in the thoracic spine; and the November 2006 Family Medical Center records indicating no neurological deficits, normal gait, but tender back with spasms. (Tr. at 775.)

In May 2007, Amy Wirts, M.D., reviewed the evidence at the reconsideration level of review and affirmed, in part, the prior opinion but added greater environmental restrictions. (Tr. at 784-791.) Dr. Wirts found Claimant's allegations "mostly credible", although they do not meet listing level severity using SSA criteria. (Tr. at 789.) Dr. Wirts also found the RFC is consistent

with the previous ALJ decision of November 21, 2006. (Id.) In addition to the medical records reviewed and referenced by Dr. Lambrechts, Dr. Wirts also had the benefit of reviewing an April 2007 examination regarding Claimant's back injury in which the record demonstrated Claimant had a "normal gait/motor/sensory", positive straight leg testing, "no edema, cyanosis, etc." with a diagnosis of lumbosacral strain and strain of the thoracic spine. (Tr. at 791.)

**The Administrative Hearing**

Claimant Testimony:

At his December 2015 redetermination hearing, Claimant testified that he had not worked during the relevant period, from November 22, 2006 through October 10, 2007. (Tr. at 49.) He stated that his back, neck, and right foot pain prevented him from working and he last worked in 2003 as a continuous mining machine operator. (Tr. at 49-50, 58.) He testified that on a typical day during that time, he would just sit around the house and watch TV; he used a heating pad for his pain. (Tr. at 52.) He stated he did no household chores or yard work because of his pain. (Tr. at 53.) He had no hobbies, but enjoyed fishing previously. (Tr. at 53-54.)

In addition to the constant pain in his back, neck and right foot, Claimant testified that he experienced depression where he did not want to live or be around people, even his "grandbabies." (Tr. at 54-55.) He also had sleeping problems and crying spells. (Tr. at 56.)

Gina Baldwin, Vocational Expert ("VE") Testimony:

The ALJ asked the VE to assume an individual of Claimant's age, education, and past work experience who could physically perform light work that involved only occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders or scaffolds; occasional power gripping with the non-dominant (left) upper extremity as would be

involved in operating hand tools such as a drill; no more than moderate exposure to hazards such as unprotected heights and moving mechanical parts; and work in an environment that is no louder than a typical office environment. (Tr. at 58-60.) In response, the VE testified that such an individual could perform work as a night cleaner, a price marker, and a small parts assembler. (Tr. at 60.)

## Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

## Analysis

Claimant has essentially argued that the ALJ's decision is not supported by substantial

evidence because, she did not believe his allegations of subjective complaints, instead improperly credited State agency opinion evidence and discounted his treating physician's opinion, and thereby crafted an RFC that Claimant was incapable of performing. (Document No. 25.)

Evaluating Credibility and Pain:

Social Security Ruling 96-7p[9] clarifies the evaluation of symptoms, including pain: 20 C.F.R. §§ 404.1529, 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements. See, also, Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

---

[9] The undersigned is aware that this Ruling has been superseded by SSR 16-3p, effective March 28, 2016, however, the former Ruling applies to the ALJ's decision herein, having been issued on March 25, 2016. See, SSR 16-3p, 2016 WL 1131509.

As an initial matter, it is well known that credibility determinations are properly within the province of the adjudicator and beyond the scope of judicial review. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Davis v. Colvin, 3:13-CV-23399, 2015 WL 5686896, at *7 (S.D.W. Va. Sept. 8, 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal.") Claimant only asserts that the ALJ did not believe him. (Document No. 25 at 3.)

The ALJ herein properly performed the two-step process,[10] and then proceeded to review the evidence of record and reconciled it with Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms. (Tr. at 24-25.) This evidence included, but was not limited to Claimant's allegations in his applications for benefits, such as his inability to work due to the injuries he sustained to his back, neck, left foot and hand, the constant pain he felt and the inefficiency of his pain medication in relieving his pain symptoms. (Tr. at 24.) The ALJ also discussed Claimant's testimony during the redetermination hearing. (Id.) The ALJ next reviewed at length the medical evidence of record, discussed *supra*, with multiple citations from the record. (Tr. at 25-31.) After her review of the evidence, the ALJ expressly found that the "[RFC] is supported by the objective medical evidence, the opinions of record, and the beneficiary's hearing testimony." (Tr. at 31.) Notably, the ALJ stated

> I find the beneficiary's allegations are not fully credible. As summarized above, the medical evidence of record shows conservative treatment during the relevant time period. The physical examinations were generally normal other than diminished lumbar range of motion and some muscle spasm (Exhibits B4F, B5F, B7, B8F, B40F). The beneficiary consistently had normal muscle strength and gait (id.). The MRI evidence showed no evidence of disc herniation (Exhibit B8F). Also, the record reflects the beneficiary had improvement in his functioning with physical therapy and use of pain medication (Exhibit B7F, B21F). In regards to the beneficiary's credibility, it is notable that a physical examination showed positive

---

[10] See, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

Waddell signs, which raise a question as to the genuineness of the beneficiary's pain behaviors (Exhibit B5F). The beneficiary's credibility is further called into question by Dr. Shraberg's note that he appeared to be "embroidering" his symptoms as a means of avoiding rehabilitation (Exhibit B17F, p.4). This evidence and the objective evidence, which does not support the alleged intensity of his pain symptoms, does not support the allegation that he was unable to perform work activity.

(Tr. at 31-32.) The ALJ's discussion of Claimant's subjective complaints in addition to the objective medical evidence and the findings therein, is illustrative that the ALJ reviewed the factors promulgated under 20 C.F.R. §§ 404.1529(c), 416.929(c) to assess Claimant's credibility, and is compliant with the Regulations. Claimant's contention that the ALJ merely did not "believe" his allegations is without merit, as the written decision demonstrates that the ALJ thoroughly considered the evidence and reconciled it with Claimant's allegations pursuant to the proper legal authorities. In short, the undersigned **FINDS** the ALJ's credibility analysis was appropriate and based upon substantial evidence.

Evaluating Opinion Evidence:

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Ultimately, it is

the responsibility of the Commissioner, not the court, to review the case, make findings of fact, and to resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(c)(2), 416.927(c)(2).

In this case, the ALJ recognized that Dr. Mahmood was Claimant's treating physician, and acknowledged Dr. Mahmood opined in August 2006 that Claimant was "totally disabled." (Tr. at 29.) However, the ALJ gave Dr. Mahmood's opinion "little weight", properly noting that a disability determination "is an administrative finding that is reserved to the Commissioner (SSR 96-5p)." (Id.) Additionally, the ALJ explained that Dr. Mahmood's opinion was "without support or rationale" and "not supported by the medical evidence of record." (Id.) The ALJ explained further that Claimant's physical examinations "were generally normal other than diminished lumbar range of motion. The examinations consistently showed normal muscle strength and gait."

(Id.) In short, the ALJ gave "good reasons" for giving Dr. Mahmood's opinion less than controlling weight pursuant to the aforementioned Regulations.

With respect to the opinion evidence by Drs. Lambrechts and Wirts, there is no dispute that the ALJ gave their opinions "great weight." (Id.) In support of the weight afforded to the opinions provided by the State agency medical consultants, the ALJ expressly noted that they both agreed Claimant was capable of light work, that these physicians had the medical expertise as well the expertise in evaluating SSA claims, that the physicians reviewed the medical evidence of record, and importantly, that "these opinions are generally consistent with the medical evidence of record." (Id.) The ALJ again mentioned that Claimant's treatment had been conservative during the relevant period, that he had improvement with physical therapy and pain medications, and that his physical examinations were "generally normal other than some diminished lumbar range of motion." (Id.) Pursuant to 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii), an adjudicator has discretion to give weight to the opinions provided by State agency medical consultants in the same manner as other opinion evidence. Further, an ALJ is entitled to rely upon the professional assessments provided by State agency physicians because they are qualified experts in disability evaluations. See Baker v. Colvin, No. 3:13-cv-20376, 2015 WL 5687544, at *8 (S.D.W. Va. Sept. 8, 2015).

Having reviewed the opinion evidence provided by Drs. Lambrechts and Wirts, the undersigned **FINDS** Claimant's argument that their opinions were rendered without citation to or review of the medical evidence of record, and based solely upon their assumptions that Claimant was not credible, is entirely without merit. (Document No. 25 at 3-4.) In addition, the undersigned **FINDS** that the ALJ's review of the opinion evidence herein was compliant with the applicable Regulations and case law, and is based upon substantial evidence.

<u>The RFC Assessment:</u>

As noted by the Commissioner, residual functional capacity represents the *most* that an individual can do despite his limitations or restrictions. <u>See</u> Social Security Ruling 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved to the Commissioner. <u>See</u> <u>Id</u>. §§ 404.1527(d), 416.927(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

<u>Diaz v. Chater</u>, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Following the discussion of the medical evidence regarding Claimant's impairments, his allegations and testimony of same, and the evaluation of the opinion evidence, the ALJ summarized the RFC assessment as described *supra*. The RFC assessment concerning both Claimant's physical and mental impairments included the required narrative discussion that allows for meaningful judicial review and with respect to the findings of fact and conclusions provided in the written decision, it is clear that the ALJ complied with the mandate to "build an accurate and logical bridge from the evidence to his conclusion." <u>Monroe v. Colvin</u>, 826 F.3d 176, 189 (4th Cir. 2016) (quoting <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000)).

Finally, based on the little weight assigned to Dr. Mahmood's opinion, particularly with

respect to Claimant's "total" disability, the ALJ was not obligated to pose a hypothetical question to the VE including such a severe limitation. Hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record; in this case, the ALJ determined that the limitations found by the State agency medical consultants were more credible, and the ALJ herself found additional limitations and reduced Claimant's RFC accordingly. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (Tr. at 25.) As stated above, the reconciliation of conflicting evidence was for the ALJ to resolve, not this Court. See SSR 96-8p, 1996 WL 3741784, at *7.

In sum, the undersigned **FINDS** that the ALJ's RFC assessment is supported by substantial evidence, and further **FINDS** that the decision finding Claimant was not entitled to disability benefits during the relevant period, and thereby terminated, is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** Claimant's request for summary judgment (Document No. 25.), **GRANT** the Defendant's request to affirm the decision below (Document No. 26.), and **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings

and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 4, 2017.

Omar J. Aboulhosn
United States Magistrate Judge